IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REGENCY HOSPITAL COMPANY OF SOUTH ATLANTA, L.L.C.,

Plaintiff,

v.

UNITED HEALTHCARE OF GEORGIA, INC.,

Defendant.

CIVIL ACTION FILE
NO. 1:05-CV-1508-TWT

OPINION AND ORDER

This is an action seeking to recover benefits under a group health benefit plan. It is before the Court on the Plaintiff's Motion to Remand [Doc. 3]. For the reasons set forth below, the Plaintiff's motion is DENIED.

I. BACKGROUND

Plaintiff Regency Hospital Company of South Atlanta, L.L.C. ("Regency Hospital") operates a long-term acute care hospital located in East Point, Georgia. This action arises out of the hospitalization of Manyaka A. Chu at Regency Hospital from October 7, 2003, until his death on November 28, 2003. Mr. Chu was an employee of The Delmar Gardens Family ("DGF"). Mr. Chu's primary health insurance was provided under the Delmar Gardens Family Welfare Benefit Plan (the

"Plan"). The Plan is a self-funded health benefits plan, meaning that DGF, as the plan sponsor, funds the cost of claims from its own assets rather than funding that cost by purchasing an insurance contract. (Snell Aff. ¶ 2.) Self-funded plans typically hire a third party, often an insurer, to administer claims and to provide access to networks of participating providers. In this case, DGF contracted with the Defendant[1] to serve as Claims Administrator. (Id.)

On October 7, 2003, the Plaintiff verified that Mr. Chu was medically insured under the DGF Plan and the Defendant precertified him for admission. Upon admission, Mr. Chu agreed to the "Conditions of Admission to Regency Hospital." As part of this agreement, Mr. Chu assigned his right to the payment of medical benefits to the Plaintiff. (Verified Compl., Exs. B, C.) In accordance with this assignment, the Plaintiff submitted a statement for payment to the Defendant in the amount of $402,768.48 in connection with services rendered to Mr. Chu for the period October 7, 2003, until November 28, 2003. The Plaintiff has received payment in the amount of $51,687.24. Presumably this payment covers services rendered during the

[1]In its Verified Complaint, the Plaintiff named as defendant United Healthcare of Georgia, Inc. United HealthCare Insurance Company ("UHIC") answered the complaint and filed the notice of removal in this Court. UHIC asserts that it, rather than United HealthCare of Georgia, Inc., serves as the Claims Administrator of the DGF Plan. (Snell Aff. ¶ 6.) Thus, UHIC contends it is the proper defendant to this action.

period October 7, 2003, through October 13, 2003, the date on which Mr. Chu's insurance coverage under the DGF Plan was terminated. (See Verified Compl. ¶ 7.) The Plaintiff alleges, however, that it was never notified of this termination. Accordingly, the Plaintiff argues that the Defendant owes the remaining balance of $351,081.24 for services rendered to Mr. Chu.

The Plaintiff filed suit against the Defendant in the Superior Court of Gwinnett County, Georgia, asserting claims for breach of contract, suit on account, and negligent misrepresentation. On June 8, 2005, the Defendant removed the action to this Court. The Defendant asserted two bases for jurisdiction in this Court. First, it alleged that the Court has federal question jurisdiction because the Plaintiff seeks to recover benefits under a group health benefit plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Second, the Defendant alleged that diversity jurisdiction exists. In response, the Plaintiff moves to remand.

## II. DISCUSSION

The Defendant removed this action from the Superior Court of Gwinnett County, Georgia, asserting federal question jurisdiction pursuant to ERISA, 29 U.S.C. § 1001 *et seq.* The Plaintiff contends, however, that this Court lacks subject matter jurisdiction and moves to remand the action. Under the removal statute, "any civil

action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by . . . the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over, among other cases, "federal question" cases. Federal question cases are those "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law "if federal law creates the cause of action or if a substantial disputed issue of federal law is a necessary element of a state law claim." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998) (citing Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983)). Ordinarily, when determining whether a federal question exists, the court applies the well-pleaded complaint rule. Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S. Ct. 2488, 2494 (2004). The well-pleaded complaint rule requires that the court look only to the face of the complaint to determine if the plaintiff has stated a claim arising under federal law. Id. The possibility or existence of a federal defense does not create federal question jurisdiction. Id.; Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987).

The Plaintiff argues that it has not asserted any federal cause of action and, thus, the well-pleaded complaint rule dictates that federal question jurisdiction is lacking.

However, there are exceptions to the well-pleaded complaint rule. In particular, "when a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed." Davila, 124 S. Ct. at 2495 (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)). If a state law cause of action is completely preempted by a federal statute, the claim pled in terms of state law is in actuality based on the federal law. Id.; Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."). In essence, the complete preemption doctrine "will convert state law claims into federal claims for the purposes of the well-pleaded complaint rule, allowing a defendant to remove the case to federal court." Kemp v. International Business Machines Corp., 109 F.3d 708, 712 (11th Cir. 1997).

Complete preemption in the area of employee welfare benefit plans arises out of ERISA § 502(a), 29 U.S.C. § 1132(a), a comprehensive remedial scheme that sets forth the exclusive cause of action for the recovery of benefits under an ERISA plan. Aetna Health Inc., 124 S. Ct. at 2495; Metropolitan Life Ins. Co., 481 U.S. at 65-67. ERISA § 502(a) provides that:

> A civil action may be brought–(1) by a participant or beneficiary – . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). The Supreme Court has determined that this civil enforcement mechanism has "extraordinary pre-emptive power." Davila, 124 S. Ct. at 2496. As such, if a state law claim is one seeking relief available under § 502(a), i.e., a claim for benefits, ERISA's complete preemption applies and the action is removable to federal court. Id.; see Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1281 (11th Cir. 2005) ("Congress has accomplished this 'complete preemption' in ERISA § 502(a), which provides the exclusive cause of action for the recovery of benefits governed by an ERISA plan. State law claims seeking relief available under § 502(a) are recharacterized as ERISA claims and therefore 'arise under' federal law."). In an ERISA case, complete preemption applies if the following elements are satisfied: (1) a relevant ERISA plan exists; (2) the plaintiff has standing to sue under the plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief akin to what is available under 29 U.S.C. § 1132(a), which will often be a claim for benefits due under the plan.[2] Cotton, 402 F.3d at 1281;

[2]Complete preemption is distinct from, but often confused with, defensive preemption, which arises out of ERISA § 514(a), 29 U.S.C. § 1144(a). Defensive preemption is broader than complete preemption. Cotton, 402 F.3d at 1288-89. Complete preemption is actually not a preemption doctrine in the usual sense but rather a federal jurisdiction doctrine. Lister v. Stark, 890 F.2d 941, 943 n.1 (7th Cir. 1989). Defensive preemption, on the other hand, does not serve as a basis for removal but rather provides only an affirmative defense to state law claims. Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999); see Smith v. GTE Corp., 236 F.3d 1292, 1313 (11th Cir. 2001) ("[C]omplete preemption functions as

Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999). Applying these four factors, the Court finds that the Plaintiff's state law claims are completely preempted by ERISA.

Employee benefit plans come within the scope of an "employee welfare benefit plan" for purposes of ERISA when five prerequisites are met: (1) a plan, fund, or program; (2) is established or maintained; (3) by an employer, employee organization, or both; (4) for the purpose of providing certain specified benefits in the event of sickness, accident, disability, or death; (5) to participants or beneficiaries. See 29 U.S.C. §§ 1002(1) & 1002(2)(A); Anderson v. UNUM Provident Corp., 369 F.3d 1257, 1263 (11th Cir. 2004). The Plan satisfies all five elements. An ERISA "plan" exists whenever there are "intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." Butero, 174 F.3d at 1214 (quoting Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc)). The intended benefits under the Plan were those paid in the event that the employee, Mr. Chu, or his dependents incurred medical expenses. The intended

---

a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court."). State law claims are defensively preempted under § 514(a) if the claims "relate to" an ERISA plan. 29 U.S.C. § 1144(a); Cotton, 402 F.3d at 1288. The "relate to" analysis applicable to issues of defensive preemption is not the appropriate test to determine whether federal question jurisdiction exists. See Jones v. LMR Int'l, 351 F. Supp. 2d 1308, 1311-12 (M.D. Ala. 2005).

beneficiaries were Mr. Chu and his dependents. Financing for the Plan was provided by DGF, and the procedures for applying for and collecting benefits were clearly set forth in the Plan. (Snell Aff., Ex. A, at 41-43.) "A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." Butero, 174 F.3d at 1214. Based on the conduct of DGF in arranging for the Plan, deciding eligibility, and funding the intended benefits, it is clear that the Plan was "established" by the employer. See Anderson, 369 F.3d at 1265-66 (discussing factors indicative of establishment); Butero, 174 F.3d at 1215-16 (same). Finally, it is undisputed that the purpose of the Plan was to provide health benefits to employees of DGF and their dependents. Thus, a relevant ERISA plan exists for purposes of complete preemption.

In order for a state law claim to be completely preempted and recharacterized as a federal claim, the plaintiff must have standing to sue under the relevant ERISA plan. Butero, 174 F.3d at 1212. ERISA provides an exclusive list of parties with standing to sue to enforce ERISA provisions: (1) participants; (2) beneficiaries; (3) fiduciaries; and (4) the Secretary of Labor. 29 U.S.C. § 1132(a). Only participants or beneficiaries have standing to assert a claim for benefits from an "employee welfare benefit plan." 29 U.S.C. § 1132(a)(1)(B); Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1241 (11th Cir. 2001) ("ERISA's civil enforcement section permits

two categories of individuals to sue for benefits under an ERISA plan–plan beneficiaries and plan participants."). Under ERISA, a "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Healthcare providers, such as the Plaintiff, generally are not considered "participants" or "beneficiaries" under ERISA. Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1294 (11th Cir. 2004); Hobbs, 276 F.3d at 1241. However, the Eleventh Circuit Court of Appeals has held that "neither 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from ERISA participants or beneficiaries." Physicians Multispecialty Group, 371 F.3d at 1294 (internal punctuation omitted). Thus, a healthcare provider may acquire derivative standing by obtaining a written assignment of the right to payment of medical benefits from a beneficiary or participant, provided that the plan does not forbid assignment of benefits. Physicians Multispecialty Group, 371 F.3d at 1294; Hobbs, 276 F.3d at 1241. Mr. Chu executed

a written assignment of his right to benefits to the Plaintiff. (Verified Compl., Exs. B, C.) Therefore, for purposes of determining jurisdiction, the Plaintiff, as a provider-assignee, has derivative standing to assert a claim for benefits under ERISA. See City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 228 (1st Cir. 1998); Kennedy v. Connecticut Gen. Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991).

The Defendant argues that, as Claims Administrator of the Plan, it is an ERISA entity. Plans and their fiduciaries are considered ERISA entities. See 29 U.S.C. § 1132(d); O'Neal v. Central States, Southeast & Southwest Areas Pension Fund, 378 F. Supp. 2d 1370, 1376 (N.D. Ga. 2005). ERISA provides that:

> a person is a fiduciary with respect to the plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Whether a party qualifies as a fiduciary under ERISA is not an all-or-nothing determination. Rather, fiduciary status is based upon whether the party is a fiduciary with respect to the particular activity at issue. Cotton, 402 F.3d at 1277 (quoting Coleman v. Nationwide Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992)).

Claims administrators may be considered fiduciaries if the plan documents themselves delegate relevant discretionary authority or responsibility to them. See

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989) (looking to plan documents to determine whether plan administrator exercised discretionary powers in interpreting plan provisions). Here, the Plan expressly delegates discretionary authority to the Defendant in certain areas. Specifically, the Claims Administrator is given the "discretion and authority to initially determine on [DGF's] behalf whether a treatment or supply is a Covered Health Service and how the Eligible Expense will be determined and otherwise covered under the Plan." (Snell Aff., Ex. A, at 4.) Along with DGF, the Claims Administrator has the "sole and exclusive discretion" to interpret benefits, terms, conditions, limitations, and exclusions under the Plan and to make factual determinations related to the Plan and its benefits. (Id. at 60.) Moreover, the first level of appeal for claim denials is conducted by the Claims Administrator. (Id. at 43-44.) Whether this discretionary authority translates into fiduciary status under ERISA depends on whether there is a nexus between the alleged misconduct and the discretionary authority exercised. See Cotton, 402 F.3d at 1277. The Court finds that this nexus exists. The Plaintiff's claims involve allegations that the Defendant misrepresented that the services provided to Mr. Chu would be covered under the Plan and then refused to pay the total amount due for those services. As noted, the Plan grants the Defendant discretionary authority to determine what treatments are covered as well as the discretion to interpret benefits under the Plan.

See Butero, 174 F.3d at 1213 (insurer was fiduciary because it could control the payment of benefits and the determination of the plaintiff's rights under the plan); Blue Cross & Blue Shield of Ala. v. Sanders, 138 F.3d 1347, 1352 n.4 (11th Cir. 1998) ("Claims administrators are fiduciaries if they have the authority to make ultimate decisions regarding benefits eligibility."). Because the Defendant can be considered a fiduciary with respect to the particular activities alleged, the Defendant is an ERISA entity.

The final element required for complete preemption is that the plaintiff seeks compensatory relief akin to what is available under 29 U.S.C. § 1132(a). The Plaintiff asserts a claim for breach of contract and suit on account.[3] The Plaintiff also asserts a claim for negligent misrepresentation, alleging that the Defendant represented that Mr. Chu was precertified for admission and that the Plaintiff relied on this representation to its detriment by providing medical services for which it has not be paid. For each of these claims, the Plaintiff seeks to recover benefits that it contends are due under the Plan.[4] This is precisely the type of relief provided under § 1132(a).

---

[3]A suit on account is similar to a breach of contract claim as it must be based either on an express or implied contract. Zampatti v. Tradebank Int'l Franchising Corp., 235 Ga. App. 333, 344 (1998).

[4]The Plaintiff argues that its claims are "brought under cover of O.C.G.A. § 33-24-59.3(b)," a statute that requires insurers to honor all patients' assignments of benefits, even if the healthcare provider is not a preferred provider. (Pl.'s Mot. to

In fact, the Eleventh Circuit has recognized that § 1132(a)(1)(B) claims "essentially are contract claims." Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1014 (11th Cir. 2003) (quoting Land v. CIGNA Healthcare of Fla., 339 F.3d 1286, 1293 (11th Cir. 2003)). In addition, claims against an insurer for fraud, a claim nearly identical to negligent misrepresentation, see Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc., 117 F. Supp. 2d 1357, 1360 (N.D. Ga. 2000), "are in essence claims to recover benefits due to the beneficiary under the terms of the plan." Butero, 174 F.3d at 1213 (internal punctuation omitted); Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024, 1029 (11th Cir. 1997) (claim based on alleged misrepresentation that certain coverage would exist is claim for benefits). Therefore, the relief sought by the Plaintiff is akin to that available under 29 U.S.C. § 1132(a). The Court holds that the Plaintiff's causes of action, brought against an ERISA fiduciary to remedy a denial of benefits under an ERISA benefit plan, are completely preempted by ERISA §

---

Remand, at 9.) However, this statute is not mentioned anywhere in the Plaintiff's Verified Complaint nor is there any reference to the Plaintiff's alleged statutory rights. The complaint simply asserts common law claims for breach of contract, suit on account, and negligent misrepresentation. Thus, the Court declines to read into the claims any allegations based upon O.C.G.A. § 33-24-59.3(b).

502(a)(1)(B). Thus, removal to this Court was permissible based upon federal question jurisdiction, 28 U.S.C. § 1331.[5] The motion to remand is denied.

The remaining issue is whether attorney's fees and costs should be awarded to the Plaintiff for the amount of time spent in litigating the removal issue. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of attorney's fees pursuant to § 1447(c) lies solely in the discretion of the court. See Hobbs, 276 F.3d at 1243 (reviewing denial of remand order costs and fees for abuse of discretion). Because the Court finds that the Defendant properly removed this case, it is not liable for expenses incurred by the Plaintiff resulting from the removal of this action, including attorney's fees.

## III. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Remand [Doc. 3] is DENIED.

SO ORDERED, this 18 day of November 2005.

---

[5]Because the Court finds that removal was proper based upon federal question jurisdiction, it need not address whether diversity jurisdiction exists.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge