IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REGENCY HOSPITAL COMPANY
OF SOUTH ATLANTA, L.L.C.,

    Plaintiff,

      v.

UNITED HEALTHCARE
INSURANCE COMPANY,

    Defendant.

CIVIL ACTION FILE
NO. 1:05-CV-1508-TWT

OPINION AND ORDER

This is an action seeking to recover benefits under a group health benefits plan.

It is before the Court on the Defendant's Motion to Dismiss, or in the Alternative, for

Summary Judgment [Doc. 34].  For the reasons set forth below, the Defendant's

Motion for Summary Judgment is GRANTED.

I.  BACKGROUND

Plaintiff Regency Hospital Company of South Atlanta, L.L.C. ("Regency

Hospital") operates a long-term acute care hospital located in East Point, Georgia.

This action arises out of the hospitalization of Manyaka A. Chu at Regency Hospital

from October 7, 2003, until his death on November 28, 2003.  Mr. Chu was an

employee of the Delmar Gardens Family ("DGF").  Mr. Chu's primary health

T:\ORDERS\05\Regency Hospital\msjtwt.wpd

insurance was provided under the Delmar Gardens Family Welfare Benefit Plan (the "Plan").  The  Plan is a self-funded health benefits plan, meaning that DGF, as the plan sponsor, funds the cost of claims from its own assets rather than funding that cost by purchasing an insurance contract. (Snell Aff. ¶ 2.) Self-funded plans typically hire a third party, often an insurer, to administer claims and to provide access to networks of participating providers.  In this case, DGF contracted with the Defendant to serve as Claims Administrator.  (Id.)

On October 7, 2003, the Plaintiff verified that Mr. Chu was medically insured under the DGF Plan and the Defendant precertified him for admission.  Upon admission, Mr. Chu agreed to the "Conditions of Admission to Regency Hospital." As part of this agreement, Mr. Chu assigned his right to the payment of medical benefits to the Plaintiff.  (Verified Compl., Exs. B, C.)  In accordance with this assignment, the Plaintiff submitted a statement for payment to the Defendant in the amount of $402,768.48 in connection with services rendered to Mr. Chu for the period October 7, 2003, until November 28, 2003.  The Plaintiff has received payment in the amount of $51,687.24.  Presumably this payment covers services rendered during the period October 7, 2003, through October 13, 2003, the date on which Mr. Chu's insurance coverage under the DGF Plan was terminated.  (See Verified Compl. ¶ 7.) The Plaintiff alleges, however, that it was never notified of this termination.

Accordingly, the Plaintiff argues that the Defendant owes the remaining balance of $351,081.24 for services rendered to Mr. Chu.

The Plaintiff originally filed suit in the Superior Court of Gwinnett County, Georgia asserting claims for breach of contract, suit on account, and negligent misrepresentation. Following removal of the action to this Court, the Plaintiff moved to remand. The Court denied the motion to remand, holding that the Plaintiff's state law claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Defendant now moves to dismiss, or in the alternative, for summary judgment based on ERISA preemption and failure to exhaust administrative remedies.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III.  DISCUSSION

The Defendant argues that the Plaintiff's claims are preempted by ERISA and,

therefore, should be dismissed.  As noted above, in the previous order denying

remand, this Court determined that the state law claims asserted by the Plaintiff are

completely preempted by ERISA.  In doing so, the Court briefly discussed the

distinction between complete preemption and defensive preemption, explaining that

complete preemption is essentially a federal jurisdiction doctrine while defensive

preemption provides an affirmative defense to, and requires dismissal of, state law

claims.  See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1211-12 (11th

Cir. 1999).  Defensive preemption is broader than complete preemption and applies

when state law claims "relate to" an ERISA plan.  Cotton v. Massachusetts Mut. Life

Ins. Co., 402 F.3d 1267, 1288-89 (11th Cir. 2005); Butero, 174 F.3d at 1215.

Although the two preemption doctrines are distinct, the Eleventh Circuit Court of

Appeals has explained that if a claim is completely preempted, it is necessarily

defensively preempted.  Butero, 174 F.3d at 1215 (citing McClelland v. Gronwaldt,

155 F.3d 507, 517 (5th Cir. 1998)).  Moreover, the Supreme Court has concluded that

state law breach of contract and fraud claims are defensively preempted by 29 U.S.C.

§ 1144(a).  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987); see also

Williams v. Wright, 927 F.2d 1540, 1549-50 (11th Cir. 1991) ("With regard to state

law breach of contract claims specifically, this court and others have unanimously

held that such claims are preempted by ERISA.").  As such, dismissal of the Plaintiff's

claims with prejudice is appropriate.  Despite the Court's previous ruling regarding

preemption, the Plaintiff has not undertaken to amend its complaint to assert claims

under ERISA.  However, the Court finds that any such amendment would be an

exercise in futility as the Plaintiff failed to exhaust the administrative remedies

available under the Plan.

As a general rule, the Eleventh Circuit requires ERISA plaintiffs to exhaust all

available administrative remedies before they file an action in federal court.  Perrino

v. Southern Bell Tel. & Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000); Variety

Children's Hosp., Inc. v. Century Med. Health Plan, Inc., 57 F.3d 1040, 1042 (11th

Cir. 1995).  The exhaustion requirement reduces the number of frivolous lawsuits

brought under ERISA, minimizes dispute resolution costs, assists fiduciaries in

carrying out their duties, prevents premature judicial intervention, and provides the

courts with a more fully developed record if litigation is necessary.  Perrino, 209 F.3d

at 1315.  The Eleventh  Circuit applies the exhaustion doctrine in a strict fashion and

is disinclined to excuse its compliance.  Id. at 1315-16.  Exceptions to the exhaustion

requirement are made only for cases when "resort to administrative remedies would

be futile or the remedy inadequate, or where a claimant is denied meaningful access

to the administrative review scheme in place." <u>Id.</u> (citations omitted).  The exceptions

to the exhaustion doctrine are narrow and will excuse exhaustion only when

"requiring a plaintiff to exhaust an administrative scheme would be an empty exercise

in legal formalism."  <u>Id.</u> at 1318.  It does not appear that the Plaintiff asserts that it

should be excused from the exhaustion requirement.  Rather, the Plaintiff contends

that it did in fact file an appeal pursuant to the Plan and thus exhausted the available

administrative remedies.  (<u>See</u> Verified Compl. ¶ 18.)

Section Six of the Summary Plan Description ("SPD") for the Plan sets forth

the procedures and requirements for appealing coverage determinations. Specifically,

the SPD states:

> If you disagree with a pre-service or post-service claim determination .
> . . , you can contact the Claims Administrator in writing to formally
> request an appeal.  Your request should include:
>
> - The patient's name and the identification number from the
>   ID card.
>
> - The date(s) of medical service(s).
>
> - The provider's name.
>
> - The reason you believe the claim should be paid.

- Any documentation or other written information to support your request for claim payment.

Your first appeal request must be submitted to the Claims Administrator within 180 days after you receive the claim denial.

(Snell Decl., Ex. A at 44; <u>see</u> Britton Decl. ¶ 3.)  The parties dispute whether the Plaintiff filed a formal appeal pursuant to the SPD requirements.  The Plaintiff asserts that it sent two certified letters to the Defendant, dated October 29, 2004, and December 3, 2004, and made numerous phone calls in an effort to challenge the denial of benefits.  In both letters sent to the Defendant, the Plaintiff stated as follows:

> As assignee of Mr. Chu's benefits, Regency believes that United HealthCare's termination of benefits was made in error.  Regency would like to contest United HealthCare's decision to terminate Mr. Chu's benefits.  In order to make this challenge, Regency requests a copy of the plan under which Mr. Chu was covered, as well as any internal administrative procedures in place to present Regency's position.

(Pl.'s Reply to Def.'s Mot. to Dismiss, Exs. B & C.)  The Defendant argues, however, that these letters were simply informal complaints and requests for information, indicating the Plaintiff's intention to pursue a formal appeal and did not in and of themselves qualify as a formal appeal.  (<u>See</u> Britton Decl. ¶¶ 3-4.)  Regardless of whether the letters are properly deemed an informal inquiry or a formal appeal, the Defendant responded in a letter dated March 3, 2005, and explained its rationale for the denial of benefits.  (Britton Decl, Ex. B.)

Even assuming that the letters constituted a formal appeal, which was effectively denied by the Defendant's response, the Plaintiff failed to exhaust its administrative remedies.  In addition to the availability of an appeal to the Claims Administrator as described above, the SPD provides for a second level appeal to the Plan Administrator to be filed, in writing, within 60 days of the claimant's receipt of the first level appeal decision.  (Snell Decl., Ex. A at 45.)  Moreover, the Defendant's March 3, 2005 letter informed the Plaintiff of the right to appeal, stating: "If you are not satisfied with this decision, you or your authorized representative may file an appeal.  To do so, please send a letter within 60 days to" the address provided. (Britton Decl. ¶ 5 & Ex. B.)  It is undisputed that the Plaintiff never filed a subsequent written appeal.  (Britton Decl. ¶ 5.)  Therefore, regardless of whether the Plaintiff failed to file an initial first level formal appeal, the available administrative remedies were not exhausted.  The Defendant is entitled to summary judgment.

## IV.  CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment [Doc. 34] is GRANTED.


SO ORDERED, this 4 day of April, 2006.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge